Mr. Justice Scott delivered the opinion of the Court. It is conceded by the petitioner that no money can be drawn from the Treasury, but in consequence of an appropriation by law, and that the Auditor has' no authority to draw a warrant on the Treasury, unless the money to pay the particular debt drawn for, has been previously appropriated. But he insists that an appropriation made by the Legislature in 1846, for the pay of officers of the State Bank, which the Auditor, in his report to the Governor, bearing date the 1st of October, 1848, represented as then wholly unexpended, is now subject to the payment of his claim for services as Bank Attorney by reason of the legal effect of the act of the last Legislature entitled “ An act to facilitate the liquidation of the Bank of the State of Arkansas,” approved the 9th of January, 1849. The appropriation relied upon, was made in an act of the Legislature entitled “An act making appropriations for the year 1847, 1848 and a part of the year 1846, and for balances due from the State,” approved the 23d Dec., 1846, and is in the following words, to wit: “ Sixteenth, to pay officers of the Bank of the State of Arkansas $13,200, to be paid out of the assets of the Bank by the Financial Receiver at Little Rock.” It is not pretended that, since the passage of the act last mentioned, any appropriation whatever has been made by law to pay the officers of the Bank. Nor is it contended that this act alone, irrespective of the act approved the 9th January, 1849, makes it the duty of the Auditor to draw his warrant on the Treasury for the petitioner’s claim, but that the last mentioned act by its legal effect upon the act approved 23d Dec., 1846, in connexion with the fact that the entire sum appropriated to pay officers of the State Bank remained unexpended on the 1st day of October, 1848, does, in concurrence, impose this duty on that officer. And this upon the ground, if the petitioner is correctly comprehended, that, by force of the provisions of the act approved the 9th January, 1849, the assets of the State Bank are transmuted into funds of the State Treasury, and therefore that the words “ Assets of the Bank” in the appropriation act above cited, are now to be construed to be assets of the Bank in the State Treasury, and the words .“Financial Receiver at Little Rock” in the same act, Treasurer of the State of Arkansas. This makes it necessary to examine this act to ascertain whether or not, in its various provisions, it affords any just foundation for this supposed legal operation. And upon this examination it must be remarked, first, that it turns into the State Treasury no stream of finance that did not flow into it previously, at, and since the passage of both of the acts cited. Ever since the act of the 5th Jan’y., 1845, there has been a standing provision of law that all the “par funds” received by the Bank should be paid into the Treasury to reimburse that place for money previously advanced from that source to the Bank out of the surplus Revenue fund. And by that same act provision was made for filing with the State Treasurer the State bonds taken up by the Bank. Then so far as these two descriptions of assets or funds are concerned, there is no material change of the law as it stood at the passage of the act of the 23d IJec’r., 1846. The other provisions of the act in question are in no way material to the question before us, with the exception, possibly, of two, upon which some stress is laid, the one relating to the monthly burning of all the Bank notes of the State Bank and Branches that may come into the hands of the Financial Receiver, and the other making provision to prevent the sacrifice of any of the assets of the Bank in order to raise “par funds.” And with respect to the first of these two provisions it may be remarked that it is difficult indeed, to conceive how the ashes of these burned up bank notes, by the operation of this act, are transmuted into assets of the Bank in the State Treasury or any where else. If, then, the notes of the State Bank to be received in the course of its liquidation were the particular assets that, by the act of December 23d, 1846, were appropriated for the payment of Bank officers (and we have seen that Par funds and State bonds were otherwise disposed of) the provision in the act of the 9th Jan’y., 1849, for their monthly conflagration, necessarily from its direct inconsistency with that appropriation act, must inevitably work its repeal under the operation of the 11th section providing for the repeal of all laws inconsistent. And if the appropriation was not of these notes alone, but of these in common with the notes of the Real Estate Bank that might be received, as well as of all other descriptions of assets (except Par funds and State bonds, which were otherwise disposed of) still the act of the 9th Jan’y., 1849, cannot be said to transmute any of these assets or funds into assets of the State Bank in the State Treasury, as it provides for no new direction of these into the Treasury that did not substantially exist in December, 1846. Nor can the provision to prevent the sacrifice of the assets of the Bank, on any pretence of raising par funds, have any such magical effect, as it was designed only to save the assets of the Bank from waste and to aid her liquidation. In none of the provisions of this act then, do we see any just foundation for the position assumed by the Petitioner. True it is, that the Legislature exercised a controlling power over the assets of the Bank by the act of the 9th January, 1849, as had been long before done, but this control did not'go the length of turning into the Treasury any of the assets of the Bank that did not before have that direction. Nor is it less true that it has taken away from the officers of the Bank the power to use and dispose of the assets of that institution for the payment of their salaries and commissions] but in this provision there was but an attempt to save the Bank from herself, and it does not operate to open any new stream of finance into the Treasury. With what reason, then, can it be contended that the Bank’s assets are now on deposit in the Treasury of the State more than before the passage of the two acts cited by the petitioner? With much less can it be, that those particular assets contemplated by the appropriation act of 1846 as a fund out of which the pay of Bank officers, were to be drawn, are now on deposit in the State Treasury. But it is insisted that only the mode of paying the Bank officers has been changed. This proposition can be successfully maintained only on the hypothesis that the State Bank has long been apart of the State Treasury, and that the Financial Receiver is a quasi Treasurer to receive, keep and pay out the funds of the State Treasury; which will scarcely be seriously contended. But admitting this to be true for the sake of the argument, then the appropriation act relied upon could only make available to the petitioner such of the assets of the Bank in the hands of the Financial Receiver at Little Rock as were neither 44 par funds,4’ 44 State bonds,” or 44 Bank notes of the State Bank” as these descriptions of assets are otherwise disposed of by law, and in that case the provisions of the act of the 9th of January, 1849, directing the Bank officers in future to be paid out of the State Treasury was a work of supererogation, and, in this particular, made no change in the law further than that they should be paid by one Treasury officer instead of another, to wit: the Treasurer-in-Chief, instead of the quasi Treasurer, but nevertheless out of the same fund — a thing impracticable to be done, as the fund still remained, by law, in the hands of the quasi Treasurer, and has not been placed within the control and custody of the Treasurer-in-Chief. If, however, the provisions of the act of the 9th Jan., 1849, which we are now considering, not only turned the Bank officers over to the Treasury, but also to the State Treasury at large for their pay, which we think was clearly the intention of the Legislature, it seems inevitable that its operation, being inconsistent with so much of the previous law as had provided for their pay out of a particular fund in the hands of a particular officer of the State Bank, necessarially worked a repeal of that previous law under the provisions of the general repealing section of the act, at least, so far as the present State Bank officers may be concerned. We therefore hold that, as the Bank officers, who are now in commission, are by law to be paid by the Treasurer out of the State Treasury and not by the Financial Receiver of the State Bank at Little Rock out of the assets of the Bank, and as no appropriation has been made by law for their pay, the Auditor is not bound or authorized to draw his warrant on the Treasury for the amount of the Petitioner’s claim for services as a Bank Attorney. The Petitioner’s application for Mandamus to the Auditor is therefore denied.